CATHERINE R. DAVIS,

               Plaintiff,                      Case No. 07-15234

vs.                                   DISTRICT JUDGE BERNARD A. FRIEDMAN
                                   MAGISTRATE JUDGE STEVEN D. PEPE

MERRILL LYNCH, PIERCE, FEENER
AND SMITH, INCORPORATED,

               Defendant.
============================/

## REPORT AND RECOMMENDATION

Plaintiff Davis filed this action against Defendant Merrill Lynch, Pierce, Fenner and Smith, Incorporated ("Merill Lynch") on or about May 29, 2007, in the 36th District Court for the County of Wayne, State of Michigan, setting forth claims related to the payment of pension funds. Because Plaintiff's claims are preempted and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, Defendant filed a notice of removal of this action to this Court on December 7, 2007, pursuant to 28 U.S.C. § 1441(a) and (b) (Dkt. #1). On December 27, 2007, Defendant filed its motion to dismiss, or in the alternative, motion for summary judgment, arguing that Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted, or in the alternative, that Defendant is entitled to summary judgment because Plaintiff can prove no set of facts in support of her claim that would entitle her to relief (Dkt. #4). All pre-trial matters were referred in accordance with the authority conferred in 28 U.S.C. § 636(b) (Dkt. #7). For the reasons stated

below, it is **RECOMMENDED** that Defendant's motion be **GRANTED,** and this case be dismissed.

## I.    BACKGROUND FACTS

The issues in Plaintiff's Complaint in this action were previously raised and decided in the United States District Court for the Eastern District of Michigan in the discontinued or dismissed companion case of *Catherine R. Davis v. James J. Bante*, Case No. 2:07-cv-12270, which arose out of the same transaction or occurrence and involves matters in which it appears substantially similar evidence will be offered.[1]  Merrill Lynch therefore requested, under Local Rule 83.11, that this case be consolidated with *Davis v. Bante* before District Judge Bernard Friedman and the undersigned, as "they are fully familiar with the facts and issues involved." (Dkt. #4).  On January 3, 2008, the present case was transferred accordingly (Dkt. #5).

As described in detail in the undersigned's Report and Recommendation in *Davis v. Bante* recommending that defendant's motion be granted, Plaintiff complains about an IRS Form 1099 issued to her in the amount of $21, 714.99 by Merrill Lynch, the service provider to Daimler Chrysler's employee 401(k) retirement savings plan (Dkt. #4, Ex. B).  Plaintiff took three loan withdrawals from her 401(k) plain in the years 1998, 1999 and 2000, and failed to repay the loans.  Under United States Treasury regulations, Merrill Lynch properly issued the subject IRS form 1099 to Plaintiff.

In *Davis v. Bante*, Catherine Davis filed a one paragraph Complaint, with attachments, that states, in total, the following:

---

[1] In *Davis v. Bante*, Plaintiff filed an action against Defendant James J. Bante, a Benefits Advisor at Daimler Chrysler Corporation, on May 4, 2007, in the 36th District Court for the County of Wayne, State of Michigan, setting forth claims related to the payment of pension funds.

I received Form 1099 via mail from Merrill Lynch for $21,714.99. Affidavit of Forged Endorsement was completed and forwarded to Merrill Lynch. Forged endorsement replacement check in the amount of $21,714.99 has not been received. Plus court cost three billion.

In addition, a pattern of fraud developing in the marketplace.

(*See*, Dkt. #4, Ex. B).

A similar statement does not appear in the present Complaint. Here, under the heading "SUMMONS AND COMPLAINT," Plaintiff simply states in her Complaint "$25, 000 Plus Court Costs." Yet, in Plaintiff's response to the present motion to dismiss she states:

The Judge stated that you Merrill Lynch, Pierce, Fenner AND Smith, is protected by Federal Law AND that you have mailed me a check AND that I said I did NOT receive the check that you mailed me AND you Merrill Lynch, Pierce, Fenner AND Smith, have done what you are suppose to do: You mailed me a check. And I received a 1099 AND I will have to take this matter up the with IRS.

(Dkt. #8).

Moreover, the exhibits submitted to the state court in this action are similar to the attachments to the complaint in *Davis v. Bante*. Those attachments include the following:

1. Correspondence dated January 3, 2007, from Kevin P. Carroll, Daimler Chrysler Corporation Savings Plan Administration, to Catherine R. Davis;

2. E-mail dated May 8, 2006, written by Kevin P. Carroll; and

3. Correspondence dated May 9, 2006, written by Kevin P. Carroll to Catherine R. Davis.

(*Davis v. Bante*, Case No. 2:07-cv-12270, Dkt. #3, attachments to Complaint, Ex. A).

The entire content of the May 8, 2006, e-mail written by Kevin P. Carroll is as follows:

Catherine Davis is claiming that she never received any funds in the form of a withdrawal from her Merrill Lynch 401(k) account and for which she received a tax form 1099R in January 2002.

She is a salary union employee who had taken out three loans from her 401(k) plan account (January 1998, January 1999 & May 2000). She had been making regular loan payments until she was placed on a disciplinary leave of absence from September 2000 until February 2005. While on the LOA, she failed to make her loan payments and, after receiving several "missed payment" letters from Merrill Lynch, the loans were defaulted in June 2001. When the loans are defaulted, the outstanding loan balance is treated as a taxable withdrawal in the year of default, and reported on tax form 1099R. She received a 1099R in January 2002 (2001 tax year). The handling of this loan default by Merrill Lynch was in accordance with IRS requirements.

I tried to call Ms. Davis but the phone number listed on PeopleSoft is not her number. I will send her a letter tomorrow explaining the source of the income on the 1099R she received in 2002. I will copy you on the letter.

*Id*. at 5.

The entire contents of the May 9, 2006, correspondence from Kevin Carroll to Catherine

R. Davis is as follows:

I am responding to your recent correspondence sent to Dr. Dieter Zetsche, regarding a tax form 1099-R you received in 2002 from Merrill Lynch. According to your letter, this form reported your receipt of the taxable income of $21,714.99 in calendar year 2001.

I reviewed your situation with Merrill Lynch and am now able to explain why you received a form 1099-R. In January 1998 and January 1999 and again in May 2000, you took out loans from your Daimler Chrysler Salaried Employees' Savings Plan account. The monthly payments for these three loans were being deducted from your paycheck. In September 2000, you were placed on a leave of absence and remained on that status until February 2005. While on this leave of absence, you did not make your monthly loan payments. Merrill Lynch sent you several letters informing you of the missed payments and the consequences of not making the required payments.

The Internal Revenue Service requires 401(k) plan providers to collect loan payments and to default such loans if payments are missed. Since you did not make the required payments while on the leave of absence, Merrill Lynch had to default your three loans in June 2001. When loans are defaulted, the outstanding loan balance is treated as taxable income in the year of default. As of June 2001, the outstanding balance of your three defaulted loans was $21,714.99 for the year 2001.

I am hopeful that this information helps you understand the reason why you received the 1099-R in 2002. Should you have any additional questions, feel free to contact

me at the address indicated at the bottom of this letter.

*Id.* at 6.

Finally, the entire contents of the correspondence dated January 3, 2007, from Kevin

Carroll to Catherine Davis  is as follows:

> I am responding to the letter you recently sent to Mr. James Bante, wherein you reference a "check in the sum of $21,714.99 payable to (you), the check replacement has not yet been received."

> I sent a letter (copy enclosed) to you in May 2006 explaining that the Tax Form 1099-R (sent in 2001) was issued to you because your three Salaried Employees' Savings Plan loans had been defaulted. As mentioned in my previous letter, the Internal Revenue Service requires 401(k) plan providers to collect loan payments and to default such loans if payments are missed. Since you did not make the required payments, Merrill Lynch had to default your three loans in June 2001. As a result of the default, the outstanding balance of the three loans was considered taxable income. Accordingly, the Tax Form 1099-R reported the amount of the defaulted loans as taxable income of $21,714.99 in year 2001. The only checks issued to you (and which you cashed) were for the loans you took out in the years 1998, 1999 and 2000. Since you did not make the required loan payments, all three loans were defaulted and reported as taxable income in 2001.

> I believe that Daimler Chrysler and Merrill Lynch have made a good faith effort to explain to you the reason for the 1099-R form and why you are not entitled to a "replacement" check. As such, we consider this matter closed and we will not respond to any additional letters you send to us concerning this same matter.

*Id.* at 4.

**II.    ANALYSIS**

**A.    <u>Legal Standards</u>**

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which

relief can be granted."  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as

a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint

is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's

motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007), *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

"However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1994). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also*, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

*Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.). *Twombly*, notes that under a "literal reading of *Conley's* 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S.Ct. at 1968. *Twombly*, rejects this

literal reading of *Conley* and required that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley*, *Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

**B.      Factual Analysis**

Defendant argues that the doctrine of *res judicata* applies to this case as the same transaction and occurrence at issue here was previously decided by this Court in the *Davis v. Bante* case. Under the *res judicata* doctrine, a claim is barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) identity of the causes of action. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997).

While some of the elements of the *res judicata* doctrine appear to be present here, i.e., the Court previously rendered a final decision on factually similar issues, Defendant fails to explain it what way this case satisfies the second element of the doctrine, i.e., a subsequent action between the same parties or their privies. Clearly, Defendant Merrill Lynch was not a party in *Davis v. Bante*. Accordingly, Merrill Lynch should have briefed this Court on what manner it is a privy to defendant James J. Bante, a Benefits Advisor at Daimler Chrysler Corporation in order for the doctrine to apply. That did not occur here.

The Sixth Circuit, however, has recognized that identity of the parties is not absolutely

necessary when litigants bring repeated actions upon the same operative facts with slight change in legal theories and defendants. *See Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992). In that case, the court affirmed the dismissal of a complaint on *res judicata* grounds even though two of the named defendants were not named in the earlier action. This doctrine is known as nonmutual claim or issue preclusion. *See also Habtemariam v. Adrian*, 1999 WL 455326 (6th Cir. 1999) (unpublished); *Hazzard v. Weinberger*, 382 F. Supp. 225, 226-29 (S.D.N.Y.1974), aff'd, 519 F.2d 1397 (2nd Cir. 1975). Thus, although Merrill Lynch was not named in the first complaint, this Court has the authority to dismiss this action pursuant to the doctrine of nonmutual claim or issue preclusion because both this action and *Davis v. Bante* contain the same operative facts with only a change in defendants. *United States v. Mendoza*, 464 U.S. 154, 158-5 (1984); *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). *See, e.g.*, *Hazzard*, 382 F. Supp. at 226-229 (nonmutual claim preclusion appropriate when *pro se* litigant brings repeated actions upon same operative facts with slight change in legal theories and "cast of characters-defendants").

Alternatively, this Court should dismiss Plaintiff's Complaint pursuant to the applicable statue of limitations. While Congress did not provide a statute of limitations for actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B), the United States Supreme Court, in *Del Costello v International Brotherhood of Teamsters*, 462 US 151, 158, (1983), held that Congress intended that the Courts should apply the most closely analogous statute of limitations under state law. Federal Courts have consistently recognized that an ERISA claim for benefits is most analogous to a breach of contract claim, and is therefore subject to the state's statute of limitations for contracts. *See, Meade v Pension Appeals and Review Commission*, 966 F.2d 190, 194-195 (6th

Cir. 1992).  The Michigan Breach of Contract Statute of Limitations is six years. *See*, MCL §

600.5807(8); *see, also, Michigan United Food and Comerical Workers' Unions Drug and*

*Mercantile Employees Joint Health and Welfare Fund v Muir Company, Inc.*, 992 F.2d 594, 597

(6th Cir. 1992).

 Although the statute of limitations for a claim for benefits under ERISA is borrowed

from State Law, Federal Law determines when an ERISA claim accrues.  *Id*. at 598.  Under

Federal Law, "an ERISA claim accrues and a limitations period begins to run when the 'plaintiff

discovers, or with due diligence should have discovered the injury that is the basis of the

action.'" *Armbruster v K-H Corp*., 206 F. Supp 2d 870, 887 (E.D. Mich. 2002); (*quoting*

*Michigan United Food and Commercial Workers Union,* 992 F.2d at 597).

 The injury that Plaintiff claims is the basis for her claim here is that she did not receive

certain monies that she claims were distributed from her Savings Plan Account.  Plaintiff

indicates that she did not receive a replacement check for one she contends was forged and

apparently cashed by someone else.  She does not assert facts contesting the fact that no check

was issued to her in 2001.[2]  The only checks issued to her were for the three loans that were

made in January of 1998, January of 1999 and May of 2000.  If she did not receive any or all of

those checks, based upon loan documents that were signed by her, she was required to bring this

action no later than May 31, 2006, which would be six years after the date that she signed the

last loan document, and did not receive her check.

 This action was not filed until May of 2007.  It is clearly outside of the statute of

---

 [2] Plaintiff has alleged no facts that would support a plausible conclusion that any check
was, or reasonably should have been, issued to her in 2001, the year when she defaulted on her
loan payments.

limitations, and Plaintiff's claim is, therefore, time barred.

## III. RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Defendant's motion be **GRANTED**, and this case be dismissed. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: April 22, 2008       s/Steven D. Pepe     
Ann Arbor, Michigan       United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on April 22, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298